# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

REGINA KARASIK-TOSK,

         Plaintiff,

   v.

NANCY BERRYHILL,

         Defendant.

Case No. 17-cv-06623-BLF

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT; REVERSING THE DENIAL OF BENEFITS; AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS**

[Re: ECF 26, 27]

Plaintiff Regina Karasik-Tosk, proceeding through counsel, appeals a final decision of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security, denying her application for a period of disability and disability insurance benefits under Title II of the Social Security Act. Before the Court are Plaintiff's motion for summary judgment ("Pl. Mot.," ECF 26) and Defendant's cross-motion for summary judgment ("Def. Mot.," ECF 27).[1] Plaintiff filed a brief in response to Defendant's motion ("Resp.," ECF 32). The matter was submitted without oral argument pursuant to Civil Local Rule 16-5.

For the reasons discussed below, the Court GRANTS IN PART AND DENIES IN PART Plaintiff's motion; GRANTS IN PART AND DENIES IN PART Defendant's cross-motion; REVERSES the denial of benefits; and REMANDS for further administrative proceedings.

---

[1] Defendant moves for summary judgment on the same issues as Plaintiff. For ease, the Court refers to the arguments as Plaintiff's arguments.

## I. BACKGROUND

Plaintiff was born on November 12, 1960 and graduated from high school. Admin. Record ("AR") 205, 255. She is not currently married and has one dependent child. AR 206, 207. She has past relevant work as a caregiver and medical biller. AR 84, 255.

Plaintiff filed a claim for disability insurance benefits on April 10, 2014, alleging disability beginning January 1, 2014.[2] AR 21, 49–50, 205–16. She claims several impairments, including degenerative disc disease, fibromyalgia, arthritis of the hip, migraines, and depression. AR 253–62.

Plaintiff's application was denied initially and upon reconsideration. AR 21, 42–90, 128–44. She requested and received a hearing before an administrative law judge ("ALJ"), which was held on February 3, 2016. AR 21, 42. The ALJ heard testimony from two individuals: Plaintiff and Darlene T. Mcquary, a vocational expert ("VE"). *Id.* The ALJ issued a written decision on April 29, 2016, finding that Plaintiff was not disabled and therefore was not entitled to benefits. AR 18–36. On September 15, 2017, the Appeals Council affirmed the ALJ's decision, making it the final decision of the Commissioner. AR 1–3. Plaintiff filed this action on November 16, 2017. ECF 1.

## II. LEGAL STANDARD

### A. Standard of Review

Pursuant to sentence four of 42 U.S.C. § 405(g), district courts "have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 USC § 405(g). However, "a federal court's review of Social Security determinations is quite limited." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). Federal courts "'leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record.'" *Id.* (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014)).

---

[2] Plaintiff originally alleged disability since September 29, 2010, but later amended her alleged onset date to January 1, 2014. AR 49–50.

A court "will disturb the Commissioner's decision to deny benefits only if it is not supported by substantial evidence or is based on legal error." *Brown-Hunter*, 806 F.3d at 492 (internal quotation marks and citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and must be more than a mere scintilla, but may be less than a preponderance." *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1002 (9th Cir. 2015) (internal quotation marks and citations omitted). A court "must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id.* (internal quotation marks and citation omitted). If the evidence is susceptible to more than one rational interpretation, the ALJ's findings must be upheld if supported by reasonable inferences drawn from the record. *Id.*

Finally, even when the ALJ commits legal error, the ALJ's decision will be upheld so long as the error is harmless. *Brown-Hunter*, 806 F.3d at 492. However, "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless." *Id.* The court is "constrained to review the reasons the ALJ asserts." *Id.*

**B.      Standard for Determining Disability**

"To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, determining: (1) whether the claimant is doing substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments that has lasted for more than 12 months; (3) whether the impairment meets or equals one of the listings in the regulations; (4) whether, given the claimant's residual functional capacity, the claimant can still do his or her past relevant work; and (5) whether the claimant can make an adjustment to other work." *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014) (internal quotation marks and citations omitted). The residual functional capacity ("RFC") referenced at step four is what a claimant can still do despite his or her limitations. *Id.* at 1160 n.5. "The burden of proof is on the claimant at steps one through four, but shifts to the Commissioner at step five." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

### III. DISCUSSION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity from her alleged onset date, January 1, 2014, through the date of the decision.[3] AR 23. At step two, the ALJ found that Plaintiff had the following severe impairments: "degenerative disc disease, fibromyalgia, and arthritis of the hip." AR 23–28. However, as is relevant here, the ALJ found that there was insufficient evidence to support Plaintiff's alleged depression was a severe mental impairment. AR 26–28. At step three, the ALJ concluded that Plaintiff's impairments did not meet or medically equal the severity of one of the listed impairments in the regulations. AR 28.

Prior to making a step four determination, the ALJ found that Plaintiff had the RFC to perform the full range of light work. AR 28–34. Light work is defined in the regulations as follows:

> Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

Based on the above RFC and the testimony of the VE, the ALJ found at step four that Plaintiff was capable of performing her past relevant work as a medical code biller. AR 34. The ALJ made an alternative step five determination that Plaintiff could perform other jobs that exist in the national economy. *Id.* The ALJ therefore found that Plaintiff was not disabled from her alleged onset date through the date of the decision. AR 36.

Plaintiff asserts that the ALJ's decision is legally insufficient because: (1) the ALJ erred in failing to find Plaintiff's depression to be a severe impairment, and thus his analyses at steps 4 and 5 are not supported by substantial evidence; (2) the ALJ improperly rejected the medical evidence of Plaintiff's treating doctors; and (3) the ALJ improperly rejected Plaintiff's testimony. The

---

[3] Plaintiff has not yet reached her date last insured, December 31, 2019. AR 23.

Court addresses each argument in turn.

## A. The Degree of Plaintiff's Mental Impairment

At step two, the ALJ concluded that Plaintiff's claimed mental impairment of depression was non-severe. AR 26–28. Plaintiff argues that this finding is not supported by substantial evidence in the record. To be severe, an impairment must "last for a continuous period of at least twelve months," 20 C.F.R. § 404.1509, and it must "significantly limit" the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522(a). Basic work activities are "the abilities and aptitudes necessary to do most jobs," including such abilities as "understanding, carrying out, and remembering simple instructions." *Id.* § 404.1522(b). The Court first summarizes the ALJ's decision and then addresses Plaintiff's arguments and the Commissioner's opposition thereto.

### 1. The ALJ's Decision

The ALJ ultimately concluded that Plaintiff's depression was not a severe impairment because there was "scant evidence of mental health treatment," and because Plaintiff had "denied psychiatric hospitalizations" and "been treated with outpatient medication management primarily over the years." AR 26. He also concluded that Plaintiff's "routine treatment records do not evidence psychiatric deficits apart from the claimant's reports of depressive symptoms related in some way to her chronic pain." AR 26. In reaching this conclusion, the ALJ noted that Plaintiff "has been diagnosed with depression NOS" and "assessed a Global Assessment of Functioning (GAF) score of approximately 65, indicative of only mild symptoms or some difficulty in social or occupational functioning." AR 26.

The ALJ considered the four broad functional areas for evaluating mental disorders (*see* 20 CFR § 404.1520a) and found the following: (1) Plaintiff had mild limitation in the area of activities of daily living because she cares for her 16-year old son, performing light cooking, chores, paying the bills, and walking the dog for fifteen minutes at a time three times a day, and she is able to drive and shop independently, as well as maintain part-time employment as a caregiver for 37 hours a month, performing chores for clients and driving them to appointments, among other tasks; (2) Plaintiff had mild limitation in the area of social functioning because she

had no problems getting along with family, friends, and authority figures, she could visit with people in person and remotely, she was married, and she was able to cooperate well and connect interpersonally during a psychological evaluation; (3) Plaintiff had mild limitation in the area of concentration, persistence, or pace because though she testified she had been released from a recent job after three weeks because she had trouble concentrating and following instructions, she enjoys reading, drawing, and concerts, and she uses the computer to do tasks, and she was able to successfully perform many tests during her psychological evaluation; and (4) Plaintiff had no extended periods of decompensation. AR 26–27. Based on these results, the ALJ concluded Plaintiff's depression was non-severe. AR 27 (citing 20 CFR § 404.1520a(d)(1) ("If we rate the degrees of your limitation as "none" or "mild," we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities").

In making this functional assessment, the ALJ considered the opinion of several medical sources. First, the ALJ gave "significant weight" to consultative psychological examiner Dr. Charles DeBattista. Dr. DeBattista examined Plaintiff. The ALJ found that Plaintiff "complained of depression and pain, but reported benefit from Wellbutrin over the past 10 to 17 years, and at lower doses than she has taken in the past." AR 27 (citing AR 492–44). She also complained that her mood was sometimes depressed and is strongly affected by her physical condition. Dr. DeBattista also performed mental status testing on Plaintiff. Plaintiff "demonstrated no psychomotor agitation or retardation" and her "thought process was coherent and organized." AR. 27 (citing AR 492–44). Likewise, her "content was relevant and non-delusional," and she had "normal speech rate, rhythm, and tone." *Id.* As for her memory, her "digit span was six forward," she "could recall three of three objects immediately, and two of three objects after five minutes." AR 492–44. Finally, as to "concentration and calculations," through she "got lost in doing Serial Threes and made approximately four errors on the first seven Serial Threes," she could "spell 'world' forward and backward, perform simple multiplication, and followed the conversation well." AR 27 (citing AR 492–44). From these results Dr. DeBattista concluded that Plaintiff was "mildly to moderately impaired in her ability to relate and interact with coworkers and the public;

1    maintain concentration and attention, persistence and pace; and associate with day-to-day work

2    activity, including attendance and safety." AR 27. But he also opined that Plaintiff "would be

3    expected to at least maintain improvement over the next six to 12 months with continued

4    medication management." AR 27.

5    The ALJ also considered the opinions of two psychological consultants: Drs. Timothy

6    Schumacher and Dara Goosby. Those consultants opined that Plaintiff "has mild restriction in

7    activities of daily living; moderate difficulties in maintaining social functioning; moderate

8    difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation

9    of extended duration." AR 27 (citing AR 97–106, 120–23). While they opined that Plaintiff could

10   not sustain difficult, detailed three- to four-step work duties over extended periods, they found she

11   could "perform one to two step assignment for up to two-hour intervals during a regular workday

12   and workweek." AR 27–28. Finally, they opined Plaintiff's mood symptoms would be

13   aggravated by close interactions with the general public and critical supervision, but that she could

14   engage in routine contacts with coworkers and employers. AR 97–106, 120–23. The ALJ gave

15   "little weight" to the consultants' opinion that Plaintiff's mental impairment was severe. AR 28.

16   In so doing, the ALJ recognized the consultants were "non-treating, non-examining sources," and

17   that, as Dr. DeBattista had recognized, Plaintiff "has managed her condition with Wellbutrin over

18   the past 10 to 17 years, and, more recently, at a lower does than she has taken in the past." AR 28.

19   Moreover, Plaintiff was able to perform work as a caregiver and complete daily living activities,

20   "which likely requires a strong skill set in social functioning, concentration, persistence and pace."

21   AR 28.

22        **2. The ALJ Did Not Err in Concluding that Plaintiff's Mental Impairment Is
             Not Severe**

23   Plaintiff argues that the ALJ erred in finding that her mental impairment was not severe,

24   and, in turn, by not including relevant limitations in her RFC. At bottom, Plaintiff argues that the

25   reviewing doctors' opinion, in combination with Plaintiff's testimony, indicated that "Plaintiff

26   should be limited to work involving 1 to 2 step tasks and limited contact with supervisors and the

27   general public"—limitations that were not in her RFC. Pl. Mot. at 13.

28

Plaintiff notes that Dr. DeBattista diagnosed Plaintiff with depression and noted that Plaintiff had fatigue and "very few 'good days.'" *Id.* at 11 (quoting AR 492). Dr. DeBattista noted Plaintiff appeared mildly depressed and displayed some problems with concentration. *Id.* at 11–12 (AR 492). He opined that she would be "mildly to moderately impaired in her ability to maintain concentration, attention, persistence, and pace." *Id.* at 12 (citing AR 494). As to Dr. Schumacher, Plaintiff notes he opined that Plaintiff had "mild restriction in performing activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, and pace overall," and that Plaintiff had the limitations as described by the ALJ. *Id.* (citing AR 97, 104). Dr. Goosby affirmed these limitations. *Id.* (citing AR 120).

Plaintiff argues that the ALJ erred in his conclusion because Plaintiff's testimony about her work and daily activities does not conflict with the consultants' opinions. *See id.* at 12–13. Plaintiff testified that she can work no more than 1.5–2 hours per day. AR 51. According to Plaintiff, this cannot be extrapolated to a conclusion that she can "sustain concentration, persistence, or pace in performing detailed or multiple step tasks for 8 hours per day, 5 days per week, as required to perform full-time work." Pl. Mot. at 12. Moreover, contrary to the ALJ's conclusions, her job as caregiver does not require strong social skills because she "works one-on-one with a single disabled individual." *Id.* Plaintiff concludes that the limitations on 1- to 2-step tasks identified by the consultants should have been included as a limitation in the RFC, and that if such limitations had been included, they would have eliminated all but one of the jobs the VE identified at steps 4 and 5, thus rendering the ALJ's decision unsubstantiated. *See id.* at 13–14.

The Court agrees with Defendant that the ALJ did not err in finding that Plaintiff's depression is not a severe impairment. Substantial evidence supports this conclusion. The ALJ found that there was "scant evidence of mental health treatment," and Plaintiff had "denied psychiatric hospitalizations" and "been treated with outpatient medication management primarily over the years." AR 26. Plaintiff does not refute this finding. This evidence supports a finding that Plaintiff's depression is not a severe impairment. *See Malloy v. Colvin*, 664 F. App'x 638, 641 (9th Cir. 2016) (upholding ALJ finding that mental impairment was not severe where "record

8

showed minimal and inconsistent treatment for any psychological symptoms Malloy may have experienced" (internal quotation marks omitted)); *Lasich v. Astrue*, 252 F. App'x 823, 825 (9th Cir. 2007) (same, where claimant "provided little evidence of significant psychiatric or psychological findings demonstrating severe mental impairment and had not been regularly treated by a licensed psychologist or psychiatrist or received regular mental health counseling or therapy"). Likewise, the ALJ noted that Plaintiff's "routine medical records do not evidence psychiatric deficits." AR 26; *see, e.g.*, AR 511 (indicating normal mental status at August 20, 2014 examination); AR 1027 (noting normal mood and affect, judgment and insight at July 26, 2015 examination). Though the ALJ recognized that Plaintiff had been diagnosed with depression, that diagnosis was "indicative of only mild symptoms or some difficulty in social or occupational functioning," AR 26, and "[t]he existence of a mental impairment alone does not establish functional limitation or disability." *Leddy v. Berryhill*, 702 F. App'x 647, 648 (9th Cir. 2017).

And perhaps most importantly, Plaintiff ignores entirely the ALJ's finding that Plaintiff had "reported benefit from Wellbutrin over the past 10 to 17 years, and at lower doses than she has taken in the past." AR 27; *see* AR 492 (Dr. DeBattista noting that Plaintiff functions better on Wellbutrin and is taking a lower dose); AR 66–67 (Plaintiff noting Wellbutrin "seems to agree with [her] more or less"). The Ninth Circuit has affirmed findings that depression is not a severe impairment where "[a]lthough the record established that [claimant] had a long history of depression, the record also established that her depression was treatable and responsive to medication." *Dorrell v. Colvin*, 670 F. App'x 480, 480 (9th Cir. 2016).

Plaintiff also does not appear to argue that the ALJ should not have afforded "great weight" to Dr. DeBattista's opinion. Instead, Plaintiff appears to read Dr. DeBattista's opinion differently than the ALJ. *See* Mot. at 11–12 (describing Dr. DeBattista as opining that Plaintiff had depression and was mildly to moderately impaired). But the Court gives deference to the ALJ's reading of this opinion. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) ("If the record would support more than one rational interpretation, we defer to the ALJ's decision"). Dr. DeBattista reported the results of several tests that Plaintiff successfully completed

9

and opined, based on his examination and Plaintiff's interactions with him, that Plaintiff is able "to do detailed and complex instructions," that her "concentration and attention, persistence and pace is mildly to moderately impaired," and, among other things, that "her ability to relate and interact with coworkers and the public is mildly impaired." AR 494.

Likewise, the ALJ's findings with respect to each of the four functional areas is supported by substantial evidence. The ALJ found that Plaintiff performed a variety of daily activities, both for her own home and as a part-time caregiver, including chores around the house, as well as tasks that required driving to different locations and interacting with others, including at the grocery store and doctor's appointments. AR 26; *see, e.g.*, AR 26, 68–69, 78–80, 265–69, 493. The ALJ also found that Plaintiff had mild limitation in social functioning, consistent with Dr. DeBattista's opinion, because she could get along with people she knew and authority figures, and she generally interacted well with others. AR 26. Again, Plaintiff does not counter this evidence, except by referencing the consultants' opinions. Finally, for concentration, persistence and pace, the ALJ again found mild limitation based on Dr. DeBattista's examination and Plaintiff's ability to perform daily tasks and tasks at work. AR 26. Each of these findings was supported by substantial evidence, including Dr. DeBattista's examination and Plaintiff's own testimony.

Given this substantial evidence, the ALJ did not err in giving "little weight" to Drs. Schumacher's and Goosby's opinions that Plaintiff's depression was severe and that she faced certain additional limitations. First, these conclusions conflicted with much of the evidence described above, as recognized by the ALJ—evidence that, in part, Plaintiff does not challenge (*e.g.*, the finding that Wellbutrin worked for Plaintiff). Second, Dr. DeBattista's opinion warranted greater weight than the consultants' because he actually examined Plaintiff. *See* 20 C.F.R. § 404.1527(c)(1). And third, the ALJ seemingly did not discount these opinions altogether, but rather found the ultimate conclusion unsupported. For example, Dr. Schumacher opined that several of Plaintiff's abilities were only moderately limited. AR 103.

In sum, the ALJ's finding that Plaintiff's depression was not severe is supported by substantial evidence, and thus the Court GRANTS summary judgment for Defendant on this issue.

### B.    The ALJ's Rejection of Medical Evidence from Plaintiff's Treating Doctors

Plaintiff next argues that the ALJ erred in failing to give sufficient weight to the opinions of Plaintiff's treating physicians Drs. Balon and Allen in determining her RFC.  "Generally, the opinion of a treating physician must be given more weight than the opinion of an examining physician, and the opinion of an examining physician must be afforded more weight than the opinion of a reviewing physician."  *Ghanim*, 763 F.3d at 1160.  "If a treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, it will be given controlling weight."  *Id.* (internal quotation marks, citation, and brackets omitted).

To reject an uncontradicted opinion of a treating physician, the ALJ must provide clear and convincing reasons that are supported by substantial evidence.  *Id.* at 1160–61.  If the treating physician's opinion is contradicted by the opinion of another physician, the ALJ may reject the treating physician's opinion based upon "specific and legitimate reasons that are supported by substantial evidence."  *Id.* at 1161 (internal quotation marks and citation omitted); *see also Bray*, 554 F.3d at 1228 ("[T]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." (internal quotation marks, citation and alteration omitted)).  In determining how much weight to give a treating physician's opinion, the ALJ must consider the following factors: "the length of the treatment relationship and the frequency of examination by the treating physician, the nature and extent of the treatment relationship between the patient and the treating physician, the supportability of the physician's opinion with medical evidence, and the consistency of the physician's opinion with the record as a whole."  *Id.* (internal quotation marks, citation, and brackets omitted).

#### 1.   The Ninth Circuit's Decision in *Revels*[4]

In October 2017, the Ninth Circuit issued its opinion in *Revels v. Berryhill*, 874 F.3d 648 (9th Cir. 2017), which details how ALJ's should approach evaluating claims based on an impairment of fibromyalgia.  In explaining what fibromyalgia is, the court noted that the condition

---

[4] Neither party cited this case in the briefing.

is diagnosed "entirely on the basis of the patients' reports of pain and other symptoms." *Id.* at 656 (citation omitted). In describing a landmark 2012 Social Security Ruling, the court also noted that "fibromyalgia does not rely on X-rays or MRIs" and its symptoms "wax and wane"—people with fibromyalgia "may have bad days and good days." *Id.* (citation omitted). Given these facts, "an analysis of RFC should consider a longitudinal record whenever possible." *Id.* (citation omitted). The court then set down a rule that "[i]n evaluating whether a claimant's residual functional capacity renders them disabled because of fibromyalgia, the medical evidence must be construed in light of fibromyalgia's unique symptoms and diagnostic methods." *Id.* at 662.

After providing this background, the court went on to reverse several of the ALJ's findings for many reasons. First, the ALJ improperly gave a treating rheumatologist's opinion "no weight." *Id.* at 663. The ALJ erred on many fronts with respect to this physician, who had treated the patient on twelve occasions. As is relevant here, first, the ALJ concluded that on four of twelve occasions, the plaintiff lacked certain tender points and had normal range of motion. The Ninth Circuit rejected this reason because one can diagnose fibromyalgia with only eleven of eighteen tender points, and because a person with fibromyalgia "may have muscle strength, sensory functions, and reflexes that are normal." *Id.* (citation and alteration omitted). And the ALJ also rejected this opinion because it was "not supported by objective medical evidence." Despite plaintiff having several normal results in exams, MRIs, and x-rays, the Ninth Circuit held that the ALJ's finding "demonstrate[d] a fundamental lack of knowledge about fibromyalgia," which is "diagnosed entirely on the basis of patients' reports of pain and other symptoms," and "there are no laboratory tests to confirm the diagnosis." *Id.*; *see also id.* at 665 (holding ALJ reasoning was flawed in holding that the physical therapist's opinions went "far beyond what is supported by objective testing"). While tender-point examination constitutes objective evidence, the symptoms of fibromyalgia can "wax and wane." *Id.* Finally, the ALJ held that the doctor's opinion conflicted with the claimant's testimony at the hearing, because the claimant testified she could conduct normal daily activities. *Id.* at 664. The Ninth Circuit rejected this conclusion because the ALJ had omitted highly relevant qualifications the claimant had made in reciting her daily activities. *Id.*

The Ninth Circuit also held that the ALJ erred in rejecting the claimant's testimony as to the severity of her symptoms. *Id.* at 665–68. The ALJ had stated that the "testimony was undercut by the lack of objective findings supporting her claims of severe pain." *Id.* "He highlighted several examinations that had mostly normal results, such as an X-ray and MRIs of Revels' neck and back, as well as the nerve conduction and velocity study of her hands." *Id.* The Ninth Circuit rejected this conclusion because the examination results "are perfectly consistent with debilitating fibromyalgia," given that a diagnosis requires subjective complaints with few objective tests. *Id.* The Ninth Circuit also rejected the ALJ's conclusion that there was a "wide disparity" between the claimant's symptoms and her reports of daily activities. *Id.* at 667. Though she might have performed any number of activities in a day (such as washing dishes, doing laundry, taking her children to school), she consistently testified that she could not do all such activities in a single say and that she regularly needed to take breaks. *Id.* at 667–68.

Since the decision in *Revels*, the Ninth Circuit has had opportunity to apply this precedent. In *Smith v. Berryhill*, No. 16-17077, 2019 WL 76884, at *1 (9th Cir. Jan. 2, 2019), the Ninth Circuit upheld an ALJ's rejection of the treating physician's opinion where the ALJ found the opinion "relied largely on [the claimant's] self-reports and because [the doctor's] opinion was not supported by Smith's medical record." The court held this rejection was supported by substantial evidence because the claimant "described engaging in activities, on a regular basis," that contradicted the doctor's opinion as to the degree of impairment. *Id.* Likewise, "the ALJ did not cherry-pick the medical record," which "contradict[ed] several of her symptom complaints." *Id.* And the Ninth Circuit upheld the rejection of a second treating physician's check-box opinion where the opinion made clear that "objective evidence did not support her opinion," and the doctor "relied, at least in part, on [the claimant's] subjective reports," which contradicted the claimant's medical records. *Id.* at *2.

In *Roberts v. Berryhill*, 734 F. App'x 489, 490 (9th Cir. 2018), the Ninth Circuit likewise affirmed an ALJ ruling against a claimant who had fibromyalgia. The ALJ did not commit error in rejecting a physical therapist's opinion as contradicting the opinions of three other physicians. In so holding, the court distinguished *Revels*, in which the ALJ gave no weight to a

rheumatologist's opinion who had treated the patient at least 12 times in two years. Likewise, the court held that substantial evidence supported the ALJ's rejection of the claimant's testimony about the severity of her symptoms because the testimony "[did] not comport with objective evidence in her medical record." *Id.* at 491 (citation omitted). Specifically, the claimant "claimed debilitating pain and fatigue, but her intermittent doctor visits did not reflect such issues." *Id.* And the ALJ properly considered "the full longitudinal record" and rejected the testimony because the claimant had "unexplained gaps in treatment." *Id.* And finally, the ALJ found that the claimant's daily activities were inconsistent with her claimed disability. *Id.* at 491–92.

### 2. The Physicians' Opinions

#### a. Dr. Balon

Dr. Galina Balon treated Plaintiff on April 16, 2014. AR 434–36. Dr. Balon recognized that Plaintiff was applying for disability due to multiple medical problems, including severe fibromyalgia, insomnia, and diffuse medical ache. AR 434. Plaintiff reported to Dr. Balon "a list of her complaints and symptoms," which included, among many other things, anxiety, insomnia, diffuse musculoskeletal pain and morning stiffness, burning sensation in both lower extremities, migraines, severe nausea, chronic fatigue, and increased immobility. AR 435. As a result of her examination, Dr. Balon reported Plaintiff appeared really drained and depressed, but was alert and oriented. AR 435, 436. She had paravertebral tenderness and sciatic bilaterally, as well as 18 tender points, which is consistent with fibromyalgia. AR 435. She was also experiencing right shoulder pain, tingling, and numbness and hypoesthesia of both lower extremities. AR 435.

Dr. Balon agreed with Dr. Han, another one of Plaintiff's doctors, that Plaintiff's bilateral sciatica could be radiculopathy, and noted she would obtain an MRI of the lumbar spine. AR 436. She also referred Plaintiff to neurology for her numbness and hypoesthesia, as well as her migraines. AR 436. Dr. Balon recommended physical therapy and surgery referral if Plaintiff's shoulder pain did not improve, and Dr. Balon indicated they would continue treatment of Plaintiff's insomnia and fibromyalgia. AR 436. She also noted that Plaintiff needed help navigating the mental health system to find help for her depression and anxiety. AR 436. Dr. Balon also supported Plaintiff's application for disability. She noted that her "symptoms . . . truly

14

make her unable to perform regular work, even part-time work, and creates some difficulties taking care of her own household." AR 436. She opined that Plaintiff needed to see a physiatrist and neurologist and obtain an MRI, as well as see a psychiatrist for aggressive treatment. AR 436.

The ALJ gave "little weight" to Dr. Balon's opinion for several reasons. First, Dr. Balon supported Plaintiff's claim for disability. AR 33. Second, her opinion was "generally based on the claimant's subjective complaints with little objective findings to support that the claimant is functionally limited in any capacity." AR 33. And third, Dr. Balon based her opinion in part on Dr. Han's, but Dr. Han's opinion was conditioned on MRI findings and consultations that had not yet occurred at the time of Dr. Balon's examination. AR 33.

Plaintiff argues that this finding was inappropriate because Dr. Balon made objective findings, such as noting Plaintiff's positive tender points for fibromyalgia, the muscle tenderness, and the decreased sensation in Plaintiff's lower extremities. Pl. Mot. at 16. Moreover, Plaintiff argues that Dr. Balon's opinion is supported by an earlier MRI of Plaintiff's spine showing mild degenerative disc disease and scoliosis, as well as an x-ray showing facet degeneration. *Id.* (citing AR 329–30). Finally, according to Plaintiff, the ALJ's finding that there is little evidence of functional limitations is inconsistent with the ALJ's finding at step two that Plaintiff has severe degenerative disc disease, hip arthritis, and fibromyalgia. *Id.*

The parties dispute which test the Court should apply in evaluating this claim. The dispute turns on whether Plaintiff's non-treating, non-examining physicians' opinions can "contradict" a treating physician's (Dr. Balon's) opinion under the law. If not, then the Court must find "clear and convincing" reasons why the ALJ rejected Dr. Balon's testimony. *See* Pl. Mot. at 15; Resp. at 5–6. If not, the Court need only find that the ALJ provided specific and legitimate reasons for discounting her opinion. Def. Mot. at 13 n.9.

The Court agrees with Defendant that the ALJ needed only provide specific and legitimate reasons supporting his opinion, and that he satisfied that standard here. The Ninth Circuit applies the "specific and legitimate reason test" in cases in which a non-treating, non-examining physician's opinion conflicts with a treating physician's opinion. *See, e.g.*, *Cain v. Barnhart*, 74 F. App'x 755, 756 (9th Cir. 2003) ("We conclude that the ALJ erred by according greater weight

to the opinion of a non-examining, non-treating physician than to the opinions of Cain's treating and examining physicians without providing 'specific' and 'legitimate' reasons supported by 'substantial evidence in the record' for doing so.").  Indeed, Plaintiff's own case stands for this proposition.  In *Winans v. Bowen*, in determining whether the non-examining, non-treating physicians' opinions could outweigh contrary opinion from a treating physician, the Ninth Circuit applied the rule that "'[i]f the ALJ wishes to disregard the opinion of the treating physician, he . . . must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." 853 F.2d 643, 647 (9th Cir. 1987) (internal quotation marks and citation omitted).  And Plaintiff's other cited case, *Gallant v. Heckler*, does not help her, because in that case, unlike this one, the non-examining, non-treating physician's opinion was "contradicted by all other evidence in the record." 753 F.2d 1450, 1454 (9th Cir. 1984).

As shown above, the ALJ listed specific, legitimate reasons for rejecting Dr. Balon's opinion that are supported by substantial evidence in the record.  First, Dr. Balon advocated for Plaintiff's applying for disability, despite a lack of objective evidence before her.  *See Meador v. Astrue*, 357 F. App'x 764, 765 (9th Cir. 2009) ("The ALJ permissibly regarded Dr. Mark as an advocate, where he appeared to be acting to assist Plaintiff and the medical record lacked objective evidence to support his opinion.").

Second, substantial evidence demonstrated that Dr. Balon relied heavily on Plaintiff's complaints, as opposed to objective evidence.  AR 30.  Dr. Balon only detailed the symptoms Plaintiff reported, and then, in making her findings, seemingly referred back to those symptoms in referencing the "symptoms described above."  AR 436.  Moreover, though she performed a physical examination, she did not report any functional limitations that she had witnessed, and the only other objective evidence she cited was Dr. Han's report, as discussed below.  AR 436.  Ultimately, her examination led mostly to referrals to other doctors for future evaluation.  AR 436.  Though Plaintiff references a previous MRI showing degenerative disc disease, Dr. Balon does not appear to reference this MRI, and it is unclear whether she even considered it.  *See* AR 434–36.  The ALJ's finding was thus supported by substantial evidence.  *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly

medical signs and laboratory findings, the more weight we will give that opinion."). Third, and finally, the ALJ noted that Dr. Balon relied on Dr. Han's assessment, which itself was conditional, and the condition precedent had not yet been met. Plaintiff does not contest this fact.

Contrary to Plaintiff's assertion, the ALJ's rejection of Dr. Balon's opinion for the RFC is not inconsistent with his finding at step 2 that Plaintiff had several severe impairments. The severity finding is separate and distinct from the RFC definition and the subsequent steps. A finding of severity does not mean that a finding of functional limitations or disability will follow. In fact, Dr. Balon did not even identify any functional limitations (opining only that Plaintiff would be unable to perform regular work), such that even if the ALJ had erred, such error was ultimately harmless. *See Champagne v. Colvin*, 582 F. App'x 696, 697 (9th Cir. 2014) (affirming ALJ's rejection of treating physicians' opinions because "none of the treating providers gave an opinion regarding his functional limitations" and the plaintiff had "identified no additional medically necessary limitation that should have been included in the residual functional capacity").

Likewise, this result is not inconsistent with *Revels*. First, fibromyalgia was not the only condition Dr. Balon noted Plaintiff might have, and there was little objective evidence for any of the other conditions. Nowhere is Dr. Balon's proposed functional capacity limited to Plaintiff's fibromyalgia. Second, even as to fibromyalgia, the doctor in *Revels* was a specialist (a rheumatologist) who had a long history with the patient, treating her on at least twelve occasions, and his conclusions were based on that long history as well as his expertise. Here, there is no evidence that Dr. Balon has a history with Plaintiff. *See Roberts*, 734 F. App'x at 490. Indeed, her opinion was expressly tied to Dr. Han's opinion, which was not yet conclusive. Moreover, the ALJ did not afford her opinion "no weight," as in *Revels*, instead giving it at least a "little" weight. Likewise, while *Revels* makes clear that a plaintiff's subjective reports can support certain symptomatic findings, Dr. Balon did not aver as to specific functional limitations supported by Plaintiff's reports. As in *Smith*, it appears that Dr. Balon "relied largely on [the claimant's] self-reports," though her "opinion was not supported by [Plaintiff's] medical record." 2019 WL 76884, at *1.

As such, the ALJ did not err in discounting Dr. Balon's opinion, and thus the Court GRANTS summary judgment for Defendant on this issue.

### b. Dr. Allen

Dr. Patti Allen most recently treated Plaintiff on February 1, 2016. AR 1706–10. Dr. Allen first treated Plaintiff on July 16, 2015 and saw Plaintiff every 2–3 months thereafter. AR 1706. Dr. Allen listed Plaintiff's diagnoses as fibromyalgia and chronic depression. AR 1706. She described that Plaintiff was experiencing symptoms including diffuse pain in multiple areas of her body, non-restorative sleep, chronic fatigue, swelling, frequent and severe headaches, and depression. AR 1706–09. She also indicated she did not know if Plaintiff had positive tender points. AR 1706. Dr. Allen opined that Plaintiff's pain was severe enough to interfere with her work 33–66% of the workday. AR 1707. She noted that Plaintiff's pain was worsened by stress, fatigue, and movement, or overuse. AR 1708. She also opined that Plaintiff could sit for one hour and stand for 25 minutes at a time, and sit for 3 hours, stand for 1 hour, and walk for 2 hours in an 8-hour day, but she would need to walk around for 5 minutes every hour. AR 1708. Dr. Allen noted Plaintiff would need to take breaks throughout the day for ten minutes, but she did not say how frequently such breaks would be needed. AR 1709. Dr. Allen opined Plaintiff could occasionally twist, rarely climb stairs, and should never crouch, squat, or climb ladders, but that she could look down and up and turn her head. AR 1709. She opined Plaintiff would be absent about 4 days each month. AR 1710.

The ALJ gave Dr. Allen's opinion "little weight." AR 33. First, the ALJ noted Dr. Allen's limited treating history with Plaintiff. AR 33. Second, he noted that Dr. Allen "provided no objective findings or analysis to support the limitations" she had assessed. AR 33. Specifically, though she treated the patient for fibromyalgia, she indicated she did not know if Plaintiff had tender points. Third, her findings conflicted with other evidence in the record. Specifically, Plaintiff's other physical examinations had shown "mild findings," and Plaintiff's work activity and daily living activities (discussed at length above) demonstrated a higher level of functioning than Dr. Allen opined. AR 33 (citing AR 460, 483–84, 509–11, 589, 1090–91).

Plaintiff argues that the ALJ erred for several reasons. First, "although Dr. Allen had a

limited treatment history of Plaintiff, Plaintiff was referred to Dr. Allen by her treating doctor, Dr. Balon, who noted the presence of objective signs of fibromyalgia, including the 18 positive tender points." Pl. Mot. at 17–18. Second, Plaintiff's daily activities do not contradict Dr. Allen's findings. *Id.* And third, the ALJ did not provide reasons for discounting Plaintiff's inability to concentrate and need for extra breaks. *Id.*

As shown above, the ALJ listed specific, legitimate reasons for rejecting Dr. Allen's opinion that are supported by substantial evidence in the record. First, the ALJ properly gave reduced weight to Dr. Allen's testimony because she had not been treating Plaintiff for long. *See* 20 C.F.R. § 404.1527(c)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion."). Next, the ALJ reasonably concluded that Dr. Allen's opinion was not substantiated by objective findings. Though Plaintiff argues Dr. Balon knew of Plaintiff's 18 tender points, Dr. Allen explicitly stated that she was not aware whether Plaintiff had any tender points. AR 1706. A lack of objective evidence for the found limitations is a valid ground upon which the ALJ can determine that less weight is appropriate. *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion."); *Burkhart v. Bowen*, 856 F.2d 1335, 1339 (9th Cir. 1988) (affirming rejection of treating physician's opinion where it contained "no description—either objective or subjective—of medical findings, personal observations or test reports upon which [the physician] could have arrived at his conclusion"); *cf. Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." (citation omitted)). As the Ninth Circuit held in *Smith*, the ALJ can properly reject a check-box opinion where "objective evidence [does] not support [the] opinion" and the subjective evidence is otherwise not supported, as discussed below. 2019 WL 76884, at *2.

Finally, the ALJ's conclusion that Dr. Allen's proposed limitations contradicted other evidence in the record is supported by substantial evidence. The evidence demonstrates that other

providers found, at various times, that Plaintiff's symptoms and limitations were not as severe as Dr. Allen had concluded. For example, in May 2014, a provider found, among other similar findings, that Plaintiff had mild to moderate tenderness to palpation along the midline of the lumbar spine; full range of motion at the hips, knees, and ankles; a normal gait; no atrophy, edema, or cyanosis in her lower extremities; and the ability to complete the straight leg raise limited by hamstring tightness only at approximately 60 degrees bilaterally. AR 460. *See also* AR 483 (June 2014 exam with similar results, including a negative straight leg raise test); AR 510 (August 2014 test documenting normal motor strength in all extremities, normal reflexes, normal coordination, and normal gait); AR 589 (documenting negative straight leg raises); AR 1090–91 (noting strong straight leg raise and good flexibility). Though fibromyalgia symptoms may "wax and wane," the ALJ relied on a long history of "mild findings" (including as to Plaintiff's other impairments), in holding that Dr. Allen's testimony was rebutted. *See Smith*, 2019 WL 76884, at *1 (upholding ALJ rejection of treating physician where ALJ "did not cherry-pick the medical record," which "contradict[ed] several of her symptom complaints").

Moreover, the ALJ's finding that Plaintiff's daily activities contradicted Dr. Allen's opinion is supported by substantial evidence, as discussed in part above with respect to the ALJ's evaluation of Plaintiff's depression. The ALJ catalogued the numerous daily activities Plaintiff is able to perform, including performing house chores, caring for her son, and working part-time as a caregiver. *See* AR 26; *e.g.*, AR 26, 68–69, 78–80, 265–69, 493. He also relied in part on Dr. DeBattista's opinion to find that Plaintiff only had mild limitation in concentration, persistence and pace. AR 26. The Court does not second-guess the ALJ's rational interpretation of the evidence. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). These daily activities can contradict a treating physician's opinion. *See Smith*, 2019 WL 76884, at *1. Thus, the ALJ's finding was supported by substantial evidence. *Coaty v. Colvin*, 673 F. App'x 787, 788 (9th Cir. 2017), *cert. denied sub nom. Coaty v. Berryhill*, 137 S. Ct. 2309 (2017) (rejecting treating physician's opinion in part because the opinion was "speculative and inconsistent with [the claimant's] activities of daily living during the relevant period").

As such, the ALJ did not err in discounting Dr. Allen's opinion, and thus the Court

20

GRANTS summary judgment for Defendant on this issue.

### C. The ALJ's Rejection of Plaintiff's Testimony

Plaintiff's final argument is that the ALJ erred in rejecting her testimony as to the intensity, persistence, and limiting effects of her alleged symptoms. Pl. Mot. at 19–21.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (citation omitted). The ALJ held that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. AR 32. Defendant does not refute this holding. *See generally* Def. Mot. at 20.

"If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (citation omitted). Defendant does not argue that Plaintiff is a malingerer.

Plaintiff testified that she has not been able to perform substantial work since January 1, 2014. AR 50. She testified that she was diagnosed with fibromyalgia in 1998 and described the symptoms she was experiencing. AR 56. As summarized fairly by the ALJ, Plaintiff testified "she wakes early in the morning, suffering from a severe migraine, nausea, vomiting, and muscle pain all over her body. She reported experiencing pain in the base of her skull, neck and shoulders, lasting about three weeks before it subsides on its own, and that stress is an aggravating factor. She also alleges she experiences low back pain with sciatica, as well as hip and knee pain on a regular basis. The claimant testified her symptoms of insomnia, migraines, and diffuse muscle pain, worsened around 2013." AR 29 (citing AR 42–84; 266, 271); *see* AR 55–59. She gets migraines 3–4 times a week that usually subside by the time she goes to work in the afternoon.

She also testified that she could not stand for long without sitting, that she can sit for 35 minutes in comfortable seating before she needs to stand and stretch, and that she had pain in her

neck and shoulder that sometimes affects her right hand and ability to lift objects. AR 29 (citing AR 42–84; 267); *see* AR 69–70. Plaintiff also has attempted various medical treatments (such as physical therapy) and is involved in cognitive behavior therapy. *See* AR 42–84. She also admitted her doctors have recommended she exercise, but she testified that she experiences substantial pain after exercising. AR 60–62. And she testified as to her daily activities, as described above, including performing chores, driving to various locations, and serving as a caregiver for approximately two hours a day. AR 50–53, 67–68. She testified that she does not enjoy travelling, though she has taken two flights that were each difficult in order to attend family weddings (one in 2013 to Florida and one in 2015 to New York, which was split into two legs). AR 71–72. She also used to drive a total of 2–3 hours a day for her job, but not all in one sitting, and she does not drive that much now. AR 72–73.

The ALJ concluded that Plaintiff's testimony "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." AR 32. Specifically, the ALJ found that much of her medical history was self-reported, with the objective evidence pointing to "age-consistent findings." AR 32. He noted that Plaintiff had testified that her conditions are "not that bad," and that Plaintiff had not followed the providers' recommendations to exercise. AR 33. Though Plaintiff testified she lost her job because she couldn't concentrate and was having some physical limitations, her numerous daily activities conflicted with this testimony. AR 33 (citing AR 265–69). Likewise, though she testified she was unable to perform sedentary work, she also testified that she "reported driving consistently for two to three hours as a time" and that she flew to Florida in 2013 and New York in 2015. AR 33. He concluded that "[t]he claimant's ability to sit for long periods of time is inconsistent with the claimant's reported subjective symptomology." AR 33.

At bottom, Plaintiff argues that the ALJ erred by concluding that her daily activities are inconsistent with her testimony that "she cannot sit, stand, or walk for long enough, concentrate or focus well enough, or lift enough weight to make it through a typical work day." Pl. Mot. at 19. Specifically, she notes that none of her daily activities or her part-time work require her to sit or work consistently for long periods of time. *Id.* at 20. Likewise, she argues that the fact she took

several flights (one of which was before the alleged onset date) is not sufficient to show that she can sustain work throughout a work day. *See id.* at 19–20 (arguing that "[i]t was improper for the ALJ to single out 'a few periods of temporary well-being from a sustained period of impairment' in an attempt to discredit Plaintiff." (quoting *Garrison*, 759 F.3d 995)).

The Court finds that the ALJ's rejection of Plaintiff's testimony as to the severity of her limitations was not supported by clear and convincing reasons with respect to her limitation on sitting for extended periods of time.

As an initial matter, the Court notes that the ALJ properly discredited some of Plaintiff's testimony. As is uncontested by Plaintiff, the ALJ concluded that the medical evidence (which he detailed extensively, AR 30–32) contradicted some of Plaintiff's purported limitations, where "substantially all of the evidence point[ed] to age-consistent findings." AR 32; *see also* AR 29. As discussed above with respect to Dr. Allen's opinion, the ALJ found that many of the providers found only "mild" impairments and limitations. *See* AR 33 (citing AR 460, 483–84, 509–11, 589, 1090–91). Likewise, the ALJ detailed other medical findings from providers supporting his conclusion that the symptoms were consistent with age. *See* AR 29–32; *see* AR 448 (showing some positive findings, but also full range of motion in the hip and an MRI finding of only mild arthritis); AR 460 (showing some positive findings but no evidence of lumbar radiculopathy, and also full active motion in the hips, knees, and ankles bilaterally, ability to walk on heels and toes, normal gait, and no muscle atrophy of lower extremities); AR 586 (notes reflect only mild arthritic changes in both hips); AR 1091 (finding good flexibility, no limp, only mild osteoarthritis, and early arthritis). The ALJ also rightly considered that Plaintiff did not follow the instructions of her providers by failing to exercise despite their continued recommendations. *See Coleman v. Astrue*, 423 F. App'x 754, 756 (9th Cir. 2011) (finding plaintiff's "failure to follow repeated medical recommendations that she treat her pain with exercise and increased activity levels" undermined her credibility).

After detailing the inconsistencies between Plaintiff's testimony and the objective medical evidence, the ALJ then considered Plaintiff's daily activities. Given the extent of these activities, as discussed above, the ALJ's reliance on this evidence was a clear and convincing reason to reject

Plaintiff's testimony as to her ability to concentrate.  *See, e.g.*, *Bray*, 554 F.3d at 1227 (affirming rejection of plaintiff's testimony where, in part, plaintiff led "an active lifestyle, including cleaning, cooking, walking her dogs, and driving to appointments").

Despite his appropriate rejection of parts of Plaintiff's testimony, the ALJ did not provide clear and convincing reasons for discounting Plaintiff's purported inability to sit for longer than 35 minutes before needing to stand and stretch.  AR 70.  The only reasons the ALJ cited for rejecting this "sedentary work"-related evidence was Plaintiff's ability to drive for two to three hours "at a time" and her two cross-country flights.  AR 33.  However, the ALJ misstated Plaintiff's testimony as to the former:  She never testified that she could or did drive for two to three hours *at a time*; instead, she testified that in the past she drove two to three hours *in a day* "with breaks in between" but not "all in one shot."  AR 72–73.  And she testified that she no longer drives that much in a day.  AR 72.  As to the cross-country flights, two instances of flying cross-country to attend a loved one's wedding (one of which was outside the claimed disability period, and at least one of which was broken into two legs), AR 70–72, do not provide clear and convincing reasons to reject Plaintiff's testimony that she cannot sit for extended periods of time.  Even ignoring the fact that one can get up and walk around on a plane, Plaintiff's willingness and ability to put herself through pain to attend a loved one's wedding is evidence only that she loves her family, not that she can sit for extended periods of time day in and day out at a full-time job.  Finally, none of the objective medical evidence or Plaintiff's daily activities contradict her assertion that she cannot sit for long periods of time—indeed, as discussed above, Plaintiff's daily activities appear fairly active.  *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("Only if the level of activity were inconsistent with Claimant's claimed limitations would these activities have any bearing on Claimant's credibility.").

Because the ALJ did not provide clear and convincing reasons to discredit Plaintiff's testimony as to the limitation on her ability to sit for extended period of time, the Court GRANTS summary judgment for Plaintiff on this issue.

### D.     Remand for Further Proceedings is Appropriate

Having concluded that the ALJ committed the errors discussed above, the Court must

decide whether the errors are harmless and, if not, the appropriate remedy. "An error is harmless only if it is inconsequential to the ultimate nondisability determination, or if despite the legal error, the agency's path may reasonably be discerned." *Brown-Hunter*, 806 F.3d at 494 (internal quotation marks and citations omitted). Here, the errors were not harmless, because they were key to the RFC finding upon which the ALJ based his denial of benefits at steps four and five. Moreover, the Court cannot discern the agency's path absent appropriate consideration of all relevant evidence of record. The Court therefore must determine the appropriate remedy.

A remand for an immediate award of benefits may be appropriate in the "rare circumstances" in which the following three requirements are met: (1) "the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion"; (2) "the record has been fully developed and further administrative proceedings would serve no useful purpose"; and (3) "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Brown-Hunter*, 806 F.3d at 495 (internal quotation marks and citation omitted). Even if all three requirements are satisfied, the Court "retain[s] flexibility in determining the appropriate remedy." *Id.* (internal quotation marks and citation omitted).

The Court concludes that a remand for further proceedings is appropriate here. The first factor is met, as the ALJ failed to provide legally sufficient reasons for failing to credit Plaintiff's testimony. However, the second and third factors are not met. Plaintiff testified that she could not sit for more than approximately 35 minutes, after which she would need to stand up and stretch. Though Plaintiff's attorney proposed hypotheticals to the VE meant to encapsulate Plaintiff's testimony as to her limitations, the VE never opined on a hypothetical including this limitation alone. The closest hypothetical contemplated a claimant who would need to take a five minute break ever 45 minutes, which would include "hav[ing] to change positions . . . from sitting, standing, or walking so that may include walking for five minutes . . . during which they would be off task." VE 87–88. But Plaintiff did not testify explicitly that she would be off task or that she would need to walk around just because she needed to stand and stretch every 35 minutes. The record is not fully developed on what Plaintiff's purported limitations are when she needs to stand,

25

and thus the Court cannot hold that the ALJ would be required to find the claimant disabled on remand.

Accordingly, the Court will grant in part and deny in part Plaintiff's motion for summary judgment and will grant in part and deny in part Defendant's cross-motion for summary judgment. Pursuant to sentence four of 42 U.S.C. § 405(g), the Court will reverse the denial of benefits and remand for further administrative proceedings consistent with this order.

## IV.   ORDER

(1)   Plaintiff's motion for summary judgment is GRANTED IN PART AND DENIED IN PART;

(2)   Defendant's motion for summary judgment is GRANTED IN PART AND DENIED IN PART;

(3)   The denial of benefits is REVERSED; and

(4)   The matter is REMANDED to the Commissioner for further proceedings consistent with this order.

The Clerk is instructed to close the file.

**IT IS SO ORDERED.**

Dated: March 11, 2019

_____
BETH LABSON FREEMAN
United States District Judge